J-S58041-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH ANTHONY MARKIJOHN, II | : | |
| | : | |
| Appellant | : | No. 827 WDA 2019 |

Appeal from the Judgment of Sentence Entered December 5, 2018
In the Court of Common Pleas of Lawrence County Criminal Division at
No(s):  CP-37-CR-0000445-2015


BEFORE:  PANELLA, P.J., BENDER, P.J.E., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:                    **FILED JANUARY 22, 2020**

Appellant, Joseph Anthony Markijohn, II, appeals from the Judgment of Sentence of life imprisonment, entered December 5, 2018, following a jury trial resulting in his conviction of First-Degree Murder and Robbery.[1]  We affirm.

Except as noted, we derive the following background from the trial court's Opinions, which find substantial support in the certified record.  **See** Trial Ct. Op., 8/6/19, at 3-12; Trial Ct. Op., 5/24/19, at 3-13.

On December 28, 2014, Kaitlyn Kerezsi and Appellant, her boyfriend at the time, had planned to visit his friend, Joseph Pagley (the "Decedent"), in New Castle.  The Decedent supplied Appellant with marijuana.  However, when

---

[1] 18 Pa.C.S. §§ 2502(a), 3701(a)(1)(i), respectively.

Ms. Kerezsi woke that morning, Appellant informed her that only he would be traveling to New Castle.[2]  He packed a bag with a change of clothes and left in his green Jeep Cherokee around 1 p.m.

Between 5:30 and 6 p.m., wearing a new sweatshirt, Appellant returned from New Castle with five pounds of marijuana and a large amount of cash. The pair went to a local Walmart, purchased a safe and glass jars, returned home, and proceeded to repackage the marijuana.  Appellant began selling this marijuana to friends the following day.

This was more marijuana than Ms. Kerezsi had seen previously in Appellant's possession.  When asked about the large quantity, Appellant suggested to Ms. Kerezsi that he and the Decedent had robbed a rival marijuana growing operation.  According to Appellant, he had used a small pistol to shoot a lock on the shed containing the marijuana.  Appellant told Ms. Kerezsi that he disposed of the gun and that she should deny he had possessed one.

Earlier that day, the Decedent informed his girlfriend, Shayna Magno, that he had plans to meet someone from out of town at his house and that, therefore, she had to leave.  Ms. Magno left, met a friend, and began using heroin.  Apparently, the Decedent concluded that Ms. Magno was using heroin, which precipitated an argument between the two via text messaging and

---

[2] Appellant lived in Ashtabula, Ohio at the time.

cellphone calls. However, at 3:32 p.m., the Decedent's phone was turned off, and Ms. Magno had no further contact with him.

Sometime between 3:00 and 4:00 p.m., Appellant met the Decedent at the Roupp residence.[3] Surveillance video later recovered from a local business showed Appellant's Jeep Cherokee following the Decedent's vehicle in the direction of the Decedent's house at 3:44 p.m.

Over the next several hours, Ms. Magno tried repeatedly but unsuccessfully to contact the Decedent. Eventually, at 10:40 p.m., Ms. Magno was able to reach a mutual friend, David Roupp. She inquired as to the Decedent's whereabouts, but Mr. Roupp had not seen or heard from him.

Ms. Magno returned to the Decedent's house. His vehicle was parked outside; the front door was unlocked; however, the home was unlit, and he did not appear to be there. Unnerved by this, Ms. Magno again called Mr. Roupp, who came to the house. Upon searching the basement, Mr. Roupp discovered the Decedent's dead body.

An investigation ensued. Police recovered three .25 caliber shell casings in the basement surrounding the Decedent's body. In addition, an autopsy determined that the cause of his death was three gunshot wounds to the head, and the manner of death was homicide. N.T. Trial, 10/22/18, at 109. Each of the three .25 caliber slugs recovered from his head had been fired from the same weapon. *Id.* at 139-40.

_____

[3] Apparently, Mr. Keith Roupp coordinated this meeting. His brother, David Roupp, was not present. *See* N.T. Trial, 10/24/18, at 20.

Although he would later deny it, Appellant possessed a .25 caliber pistol. Appellant's mother gave him such a pistol for protection sometime in 2014. N.T. Trial, 10/24/18, at 113-16. Ms. Kerezsi observed a small pistol hidden underneath Appellant's mattress.[4] In addition, Mr. Roupp had witnessed Appellant threaten another friend with a small, black pistol during an argument. N.T. Trial, 10/24/18, at 34-37. Finally, Appellant had posted pictures of a .25 caliber pistol on social media. N.T. Trial, 10/23/18, 83-85. Following his arrest, Appellant directed Ms. Kerezsi to shut down his social media accounts, and she complied. N.T. Trial, 10/25/18, at 24-25.

On December 30, 2014, Terrance Albright, a random passer-by, found an iPhone under a guardrail close to the Smolen-Gulf Bridge in Ashtabula, Ohio, where Appellant resided. Guessing the manufacturer's default password and unlocking the phone, Mr. Albright learned that it belonged to the Decedent. He contacted the Decedent's father, who in turn contacted the police. The bridge is approximately 3.5 miles from Appellant's home and 85 miles from the Decedent's house.

On December 31, 2014, executing a search warrant on Appellant's home, police discovered and seized several pounds of marijuana. The marijuana was stored in jars labelled "Blue Dream" and "Fu Dawg." Text messages exchanged between Appellant and the Decedent, prior to their

---

[4] Ms. Kerezsi was unable to identify the exact type of pistol she had observed, merely describing it as "small and black." N.T. Trial, 10/25/18, at 18.

meeting, referenced these particular brands. Further, notwithstanding his story of the rival robbery, Appellant acknowledged that he had been present in the Decedent's house as late as 4 p.m. on the date of the murder and that the marijuana seized from his home had come from the Decedent's house.[5]

Police arrested Appellant and charged him with murder and robbery.[6] A jury trial commenced in October 2018, resulting in his convictions for the crimes charged. The trial court imposed sentence in December 2018.

Appellant timely filed Post-Sentence Motions challenging the sufficiency and weight of the evidence, which the trial court denied. Trial Ct. Order, 5/24/19. Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) Statement in which he solely preserved a challenge to the sufficiency of the evidence. Appellant's Pa.R.A.P. 1925(b) Statement, 6/4/19, at 1. The trial court issued a responsive Opinion.

In this appeal, Appellant purports to challenge the sufficiency of the Commonwealth's evidence. *See* Appellant's Br. at iv, v, 4. However, after reviewing his Pa.R.A.P. 1925(b) Statement and appellate Brief, we conclude that Appellant has waived this issue on appeal.

> In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with

---

[5] Further, on top of the safe found open in the Decedent's basement, police discovered a check signed by Appellant and made out for $8,200.00.

[6] Initially, police also charged Appellant with Theft by Unlawful Taking and Receiving Stolen Property; the Commonwealth subsequently withdrew those charges. 18 Pa.C.S. §§ 3921(a), 3925(a), respectively. In addition, Appellant faced marijuana-related charges in Ashtabula, Ohio.

specificity the element or elements upon which the appellant alleges that the evidence was insufficient. Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt.

**Commonwealth v. Garland**, 63 A.3d 339, 344 (Pa. Super. 2013) (citations and quotation marks omitted).

In his Pa.R.A.P. 1925(b) Statement, Appellant fails to identify whether he is challenging his conviction for First-Degree Murder or Robbery. Further, he fails to identify a single element of those crimes, nor does he assert which of those elements the Commonwealth failed to establish. **See** Appellant's Pa.R.A.P. 1925(b) Statement at 1-2 (unpaginated). Thus, we find Appellant's sufficiency claim waived. **Garland**, **supra**, at 344.

Appellant compounds his error with the Brief submitted to this Court. Appellate briefs "must materially conform to the requirements of the Pennsylvania Rules of Appellate Procedure", and this Court may dismiss or quash an appeal if the defect in the brief is substantial. **Commonwealth v. Adams**, 882 A.2d 496, 497-98 (Pa. Super. 2005). An appellant's argument section must discuss the issue actually preserved and include "citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). Where an appellant fails to develop properly a meaningful argument, we may deem the issue waived. **See Commonwealth v. B.D.G.**, 959 A.2d 362, 371–72 (Pa. Super. 2008) ("When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived.").

Despite twenty pages of argument, Appellant fails to identify which of his convictions he seeks to challenge, fails to identify the elements of either Murder or Robbery, and again fails to assert which, if any, of those elements the Commonwealth failed to establish. **See** Appellant's Br. at 2-21. Moreover, the entirety of his "Legal Analysis" section consists of mere boilerplate language reciting our relevant standard of review and a rather oblique reference to circumstantial evidence. **Id.** at 19-21. Appellant fails to address the sufficiency of the Commonwealth's evidence in any meaningful way. Thus, for this reason too, we deem Appellant's claim waived. **B.D.G.**, **supra**, at 371–72.[7]

---

[7] Notwithstanding Appellant's waiver, we briefly note the following. We review the sufficiency of the evidence "to determine whether the evidence presented at trial and all reasonable inferences derived therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to satisfy all elements of the offense beyond a reasonable doubt." **Commonwealth v. Spell**, 28 A.3d 1274, 1278 (Pa. 2011) (citation and quotation marks omitted).

To establish First-Degree Murder, for example, "the Commonwealth must establish a human being was unlawfully killed, the defendant was responsible for the killing, and the defendant acted with malice and a specific intent to kill." **Commonwealth v. Perez**, 93 A.3d 829, 841 (Pa. 2014) (citations omitted); **see** 18 Pa.C.S. § 2502(a). The Commonwealth may rely on circumstantial evidence to prove "any or every element of the crime." **Id.** (citation omitted). "[T]he fact-finder may infer that the defendant had the specific intent to kill the victim based one the defendant's use of a deadly weapon upon a vital part of the victim's body." **Spell**, 28 A.3d at 1278 (citation and quotation marks omitted).

In this case, the Commonwealth provided sufficient evidence to establish each element of First-Degree Murder. The Decedent died from three .25 caliber gunshot wounds to the head, a vital part of the body; direct and circumstantial

It is apparent from the numerous subparts to the question Appellant presented to this Court, as well as the summary of Appellant's arguments, that he conflates his sufficiency claim with a challenge to the weight of the Commonwealth's evidence. *See* Appellant's Br. at v-vi (asserting numerous deficiencies in the credibility or persuasive value of the evidence), 1 ("[Appellant] challenges the **weight** and **sufficiency** of the evidence[.]") (emphasis added). These are distinct claims that require different standards of review and, when meritorious, afford the appellant different reliefs. *See Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000). As with his challenge to the sufficiency of the evidence, Appellant utterly fails to provide a legal analysis pertinent to a weight claim. *See* Appellant's Br. at 2-21. Thus, we deem any challenge to the weight of the evidence waived. *B.D.G.*, *supra*, at 371–72.[8]

_____

evidence established that Appellant possessed a .25 caliber pistol and placed Appellant at the scene prior to the homicide. This evidence was sufficient to permit the jury to infer that Appellant unlawfully killed the Decedent and that Appellant acted with malice and a specific intent to kill. *Perez*; *Spell*.

We note further that Appellant effectively concedes the evidence was sufficient. *See* Appellant's Br. at 2 ("Circumstantially, it would appear to be enough to convict [Appellant], and, in fact, the Commonwealth convinced the jury to do so[.]").

[8] In light of his waiver, we decline to address Appellant's arguments in detail. We note, however, Appellant alleges ten specific deficiencies targeting the weight of the evidence. *See* Appellant's Br. at v-vi (specifically, subparts "a" through "i" and "k"), 2-21. These arguments are without merit. For example, Appellant asserts the Commonwealth's evidence was deficient because it failed to establish with specificity the Decedent's time of death. *See* Appellant's Br.

Finally, in two subparts to his question presented, Appellant asserts certain deficiencies in trial counsel's representation. *See* Appellant's Br. at vi, 16-18. According to Appellant, trial counsel did not effectively challenge the Commonwealth's evidence at trial and failed to secure competent expert testimony. *See id.*

"[C]laims of ineffectiveness of counsel must be raised on collateral review, not on direct appeal." *Commonwealth v. Stollar*, 84 A.3d 635, 651 (Pa. 2014) (citing *Commownealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002). Therefore, we dismiss Appellant's ineffectiveness claims raised herein, without prejudice to his right to pursue relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–46. *Id.*

Appellant's claims on appeal are waived or otherwise without merit. Accordingly, we affirm Appellant's Judgment of Sentence.

Judgment of Sentence affirmed.

---

at 4-7. However, the Commonwealth need not prove a victim's time of death. *See Commonwealth v. Haag*, 562 A.2d 289, 297 (Pa. 1989). In this case, the Commonwealth established that Appellant was present in the Decedent's house at approximately 4 p.m. on the day of the murder; his body was discovered later that evening.

In any event, we discern no abuse of the trial court's discretion in denying Appellant's challenge to the weight of the evidence, nor does the jury's verdict shock our sense of justice. *See Commonwealth v. Fortson*, 165 A.3d 10, 16 (Pa. Super. 2017).

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date:  1/22/2020