J-S59039-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| HAKIM BEY | |
| Appellant | No. 3712 EDA 2016 |

Appeal from the PCRA Order November 15, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-1100021-2002,
CP-51-CR-1100031-2002

BEFORE: BENDER, P.J.E., OTT, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED DECEMBER 14, 2017**

Appellant, Hakim Bey, appeals from the order entered in the Philadelphia County Court of Common Pleas dismissing his timely first Post Conviction Relief Act[1] ("PCRA") petition.  Appellant contends that the PCRA court erred in dismissing his myriad claims of ineffective assistance of counsel without an evidentiary hearing.  We affirm.

This Court previously adopted the trial court's recitation summary of evidence.

> On September 24, 2000, Moses Williams was shot and killed on the 2200 block of Cross Street in the City and County of Philadelphia.  Bren[c]is Drew sustained gunshots to both legs during the altercation.  Three (3) eyewitnesses, Omar Morris ("Morris"), Duane Clinkscales ("Clinkscales"),

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

and Chante Wright ("Wright"), gave statements to police, identifying [Appellant] as the shooter. On December 25, 2000, Morris was found dead of a gunshot wound to the head. The next day, Clinkscales, was treated for multiple gunshot wounds following a drive-by shooting.[1] [Appellant] was identified by Clinkscales as the shooter in the December 26, 2000 shooting incident, and as the person who shot Moses Williams. [ ] After a grand jury investigation during which both Wright and Clinkscales testified, [A]ppellant was arrested for the murder of Moses Williams and the attempted murder of Clinkscales. This matter was originally scheduled for trial on March 24, 2004, but Chante Wright failed to appear for trial, and at the Commonwealth's request, a *nolle pros* without prejudice was granted. On May 9, 2007, the *nolle pros* was lifted after Wright was located and placed in federal protective custody. Prior to trial, Chante Wright was murdered. On March 25, 2008, the Commonwealth filed a motion to introduce the statements of Chante Wright at trial pursuant to the Pennsylvania Rule of Evidence 804(b)(6), governing the admission of hearsay pursuant to forfeiture by wrongdoing. A full hearing was held, which resulted in the admission of the statements and preliminary hearing testimony of Chante Wright.

[1] Clinkscales, who also goes by the name Wiz DeNiro, was shot three times in the chest, once in the right arm, and twice in the back. Clinkscales only survived because following the death of Morris, he began wearing a bulletproof vest.

***Commonwealth v. Bey***, 922 EDA 2009 at 1-2 (Pa. Super. Aug. 1, 2011)

(unpublished memorandum) (quoting Trial Ct. Op., 4/22/10, at 1-2)).

The PCRA court summarized the procedural posture of this case as

follows:

On September 30, 2008, [Appellant] was found guilty after a jury trial, . . . of First Degree Murder, 18 Pa.C.S. § 2502(a), as a felony of the first degree; two counts of Aggravated Assault, 18 Pa.C.S. § 2702, each a felony of the first degree; Violation of the Uniform Firearms Act (VUFA), 18 Pa.C.S. § 6108, as a misdemeanor of the first degree;

and two counts of Possession of an Instrument of Crime (PIC), 18 Pa.C.S. § 907, each a misdemeanor of the first degree.

On October 1, 2008, [Appellant] was sentenced to life without parole for the first degree murder of Moses Williams; a concurrent ten (10) to twenty (20) years for the aggravated assault of Brencis Drew; a consecutive ten (10) to twenty (20) years for the aggravated assault of Duane Clinkscales; a concurrent two-and-a-half ($2^1/_2$) to five (5) years for each PIC conviction.

[Appellant] filed a post-sentence motion, which was denied without a hearing on March 10, 2009.

On August 1, 2011, the Superior Court affirmed the judgment of sentence.

On April 4, 2012, the Supreme Court denied *allocator*.

On October 1, 2012, the Supreme Court of the United States denied [Appellant's] petition for writ of *certiorari*.

On November 15, 2012, [Appellant] filed a timely *pro se* [PCRA] petition.

On November 19, 2013, Lee Mandell, Esq., was appointed PCRA counsel.

On November 4, 2014, Mr. Mandell filed a ***Finley*** letter and motion to withdraw as counsel. ***See*** [***Commonwealth v. Finley***, 550 A.2d 2013 (Pa. Super. 1988) (*en banc*)].

On November 17, 2014, [Appellant] filed a motion for a hearing pursuant to [***Commonwealth***] ***v. Grazier***, 713 A.2d 81 (Pa. 1988). On April 24, 2015, the court conducted a ***Grazier*** hearing and permitted [Appellant] to proceed *pro se*.

On July 24, 2015, [Appellant] filed a supplemental PCRA petition.

On July 27, 2016, the Commonwealth filed a motion to dismiss.

On August 12, 2016, [Appellant] filed a response to the Commonwealth's motion to dismiss.

[On October 11, 2016, the PCRA held a hearing and rendered a decision on the PCRA petition. The court did not take any additional evidence regarding Appellant's PCRA claims.]

On November 15, 2016, after issuing a Rule 907 notice,[2] the PCRA court formally dismissed [Appellant's] PCRA petition.

On November 28, 2016, [Appellant] filed the instant appeal to the Superior Court.

[Appellant] privately retained Enid Harris, Esq., as PCRA counsel. On January 11, 2017, [Appellant] filed a Rule 1925(b) Statement of Matters Complained of on Appeal, pursuant to an Order of the court . . . .

PCRA Ct. Op., 2/1/16, at 1-2.

Appellant raises the following issues for our review:

1. Was trial counsel ineffective for failing to advise [Appellant] of his right to testify?

2. Was trial counsel ineffective for failing to call Sharita Williams and Cayanna Brown as witnesses at trial?

3. Was trial counsel ineffective for failing to make a motion or argument that [Appellant's] trial violated double jeopardy in violation of the Fifth Amendment of the United States Constitution and Article I, § 10 of the Pennsylvania Constitution?

4. Was trial counsel ineffective for failing to move to dismiss pursuant to the Fifth and Sixth Amendments of the United States Constitution and Article I § 9 of the Pennsylvania

_____

[2] Pa.R.Crim.P. 907(1). Appellant filed a *pro se* response to the PCRA court's Rule 907 notice in which he generally objected to the dismissal of his claims as an abuse of discretion.

- 4 -

Constitution where there was an 8-year delay between the victim's September 2000 death and the September 2008 trial, during which time witnesses died and evidence was lost, resulting in prejudice to [Appellant]?

5. Was trial counsel ineffective for failing to seek a mistrial upon learning that Judge Hughes was placed under protective custody?

6. Was trial counsel ineffective in failing to argue or preserve for appeal the following: that the trial court violated [Appellant's] due process rights under the Fifth and Fourteenth Amendments of the United States Constitution and in violation of Article I, § 9 of the Pennsylvania Constitution when the trial court told the jury to disregard the only piece of evidence [Appellant] had offered in his own defense and thereby deprive [Appellant] of his right to defend himself?

7. Was trial counsel ineffective for failing to lodge formal objections to the jury instructions, which instructions were inaccurate and confusing in defining consciousness of guilt, reasonable doubt, and the elements of the crime(s) of criminal homicide?

8. Did the PCRA court err in not conducting an evidentiary hearing before dismissing [Appellant's] PCRA [petition] where there were facts and witnesses outside the record supporting [Appellant's] claims of ineffective assistance of counsel?

Appellant's Brief at 5-6.

First, Appellant contends trial counsel was ineffective for failing to advise him of his right to testify. Appellant argues:

In this case, [Appellant] believed that the decision of whether or not to testify was his attorney's decision, not his. He acknowledges that he was questioned by the [t]rial [c]ourt and indicated that he did not want to testify. He was not asked during the colloquy nor did he know the decision was his alone and not his attorney's decision. In fact, the [c]ourt's questions during the colloquy enforced

- 5 -

[Appellant's] belief that it was the trial attorney's decision, *e.g.*: "The [c]ourt: Have you made a decision? **You know I want you to consider [trial counsel's] position**, but have you made a personal decision about whether you wish to testify or not?" There were no questions from the [c]ourt or responses from [Appellant] indicating [Appellant] was aware that he personally could make the decision.

*Id.* at 23 (record citations omitted).

The standards governing our review of the denial of PCRA relief are well-settled:

[A]n appellate court reviews the PCRA court's findings to see if they are supported by the record and free from legal error. This Court's scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party . . . . In addition, [t]he level of deference to the hearing judge may vary depending upon whether the decision involved matters of credibility or matters of applying the governing law to the facts as so determined.

*Commonwealth v. Fahy*, 959 A.2d 312, 316 (Pa. 2008) (quotation marks and citations omitted).

To be eligible for PCRA relief, [the a]ppellant must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found at 42 Pa.C.S. § 9543(a)(2) (listing, *inter alia*, the ineffective assistance of counsel . . .). Further, [the a]ppellant must demonstrate that the issues raised in his PCRA petition have not been previously litigated or waived. *Id.* § 9543(a)(3). . . .

It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687–91 [ ] (1984). . . . Thus, to prove counsel ineffective, [a]ppellant must demonstrate that: (1) the underlying legal issue has arguable merit; (2)

- 6 -

counsel's actions lacked an objective reasonable basis; and (3) [a]ppellant was prejudiced by counsel's act or omission. [**Commonwealth v. Pierce**, [ ] 527 A.2d 973, 975 ([Pa.] 1987)].

\*\*\*

Relating to the prejudice prong of the ineffectiveness test, the PCRA petitioner must demonstrate "that there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different." [I]t is well-settled that "a court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the **Strickland** test, the court may proceed to that element first."

**Commonwealth v. Koehler**, 36 A.3d 121, 131-32 (Pa. 2012) (some citations omitted).

In **Commonwealth v. Miller**, 987 A.2d 638 (Pa. 2009), our Supreme Court opined:

Claims alleging ineffectiveness of counsel premised on allegations that trial counsel's actions interfered with an accused's right to testify require a defendant to prove either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.

**Id.** at 660 (citations and quotation marks omitted). "It is well settled that a defendant who made a knowing, voluntary, intelligent waiver of testimony may not later claim ineffective assistance of counsel for failure to testify." **Commonwealth v. Lawson**, 762 A.2d 753, 755 (Pa. Super. 2000) (citations omitted).

Instantly, the PCRA court found this claim to be meritless and opined:

> [Appellant's] first claim is that [trial c]ounsel was ineffective for failing to tell [him] that he had the right to testify. [Appellant's] claim is that [he] thought that his attorney made that decision for him.
>
> The [t]rial [c]ourt conducted a colloquy with [Appellant] on the record. In that colloquy, [Appellant] affirmed that he was aware of his right to testify, that he discussed the pro and cons with his attorney of whether or not he should testify and that he was satisfied with the advice of Counsel and [Appellant] explicitly stated on the record, quote, I don't want to testify, end quote.
>
> The [c]ourt found at that time that [Appellant] made a knowing, intelligent and voluntary waiver of his right to testify.

PCRA Hr'g, 10/11/16, at 5-6. We agree no relief is due.

A review of the record belies Appellant's claim that he was not aware that it was his decision to testify. In the colloquy, regarding his right to testify at trial, Appellant testified, *inter alia*, as follows:

> The Court: Have you discussed the pros and cons of whether you should in fact testify?
>
> Now, Mr. Bey, you do not have to testify. . . . There is no obligation on you to do anything. . . .
>
> Did you and [trial counsel] talk about that?
>
> [Appellant:] Yes.
>
> The Court: Have you made a decision? You know I want you to consider [trial counsel's] position, but have you made a personal decision about whether you wish to testify or not?
>
> [Appellant:] No.
>
> The Court: No, you didn't make a decision or no, you don't want to testify?

[Appellant:] I don't want to testify.

The Court: You don't want to testify.

That's absolutely fine. Are you satisfied with [trial counsel's] representation of you?

[Appellant:] Yes.

The Court: Is there anything at all that was not done that you would have wanted [trial counsel] to do for you?

[Appellant:] No.

N.T., 9/25/08, at 14-16.

We find the PCRA court's findings are supported by the record and free of legal error. *See Fahy*, 959 A.2d at 316. Appellant has not proven counsel interfered with his right to testify at trial. *See Miller*, 987 A.2d at 660. Therefore, based on his knowing, voluntary, and intelligent waiver of his right to testify, Appellant cannot claim ineffective assistance of counsel for failure to testify. *See Lawson*, 762 A.2d at 755.

Next, Appellant avers that "[t]rial counsel was ineffective for failing to call Sharita Williams and Cayanna Brown as defense witnesses at trial." Appellant's Brief at 24. Appellant states:

> Sharita Williams, a close friend of Chante Wright, would have testified that Chante Wright told her that [Appellant] was not involved in the shooting of Moses Williams and Brencis Drew. Sharita Williams was available, but reluctant to go to trial because she would miss time from work.[3]

---

[3] The record reveals that Appellant's trial counsel stated as follows to the court regarding the witness: "We did make an effort. We went to where she worked and she refused to come down." N.T., 9/25/08, at 18. The court responded:

> Trial counsel could have but did not subpoena Sharita Williams and compelled [sic] her testimony at trial. Cayanna Brown was available . . . and could have testified that she spoke with Chante Wright on December 3, 2007, and Chante Wright told her that she could not identify [Appellant] as a participant in the events of September 24, 2000.

*Id.* at 24-25 (footnote omitted).

To establish counsel's ineffectiveness for failure to call a witness, a petitioner must demonstrate that:

> (1) the witness existed; (2) the witness was available; (3) counsel was informed of the existence of the witness or counsel should otherwise have known of him; (4) the witness was prepared to cooperate and testify for Appellant at trial; and (5) the absence of the testimony prejudiced Appellant so as to deny him a fair trial. A defendant must establish prejudice by demonstrating that he was denied a fair trial because of the absence of the testimony of the proposed witness.

*Commonwealth v. O'Bidos*, 849 A.2d 243, 249 (Pa. Super. 2004) (citations omitted and emphasis added).

Section 9545(d)(1) requires PCRA petitioner seeking an evidentiary hearing to include with his petition "a signed certification as to each intended witness stating the witness's name, address, date of birth and substance of testimony and shall include any documents material to that witness's testimony." 42 Pa.C.S. § 9545(d)(1); *see also* Pa.R.Crim.P. 902(A)(15). An

---

"[T]he record should reflect you did what was appropriate. You reached out to the witness. You tried to get the witness to come. She is not cooperating." *Id.* A discussion was held off the record. *Id.* Trial counsel stated for the record, "[w]e're fine, Judge." *Id.* at 19.

affidavit from the witness, however, is not required. ***Commonwealth v. Pander***, 100 A.3d 626, 642 (Pa. Super. 2014) (*en banc*).

At the outset, we note that Appellant did not provide a separate witness certification regarding Sharita Williams or Cayanna Brown. Therefore, we could affirm on that basis alone.

In any event, the PCRA court further found that Appellant

> voluntarily waived his right on the record to call Sharita Williams as a witness during a colloquy at trial . . . . In fact, [Appelant] stated during the colloquy that he wanted to call Sharita Williams but she refused to come. Additionally, [t]rial [c]ounsel told the [c]ourt that Miss Williams would not cooperate with the Defense and was not willing to testify and [Appellant] makes no offer of proof as to what she would testify to.

PCRA Hr'g at 7-8. The PCRA court thus opined that Appellant's claim of ineffectiveness failed because "the witness was not willing to testify" and Appellant failed to establish prejudice." ***Id.*** at 8. Our review confirms that the court's findings are supported in the record, and we discern no legal error in the court's legal conclusions.

As to Cayanna Brown, we note that Appellant presents a new theory for relief for the first time on appeal. Specifically, in his amended PCRA petition, Appellant asserted that Brown was available to testify that Chante Wright visited Appellant in county prison "in either November or December." Appellant's Am. PCRA Pet., 7/24/15, at 36. On appeal, however, he argues that Cayanna Brown, like Sharita Williams, would testify that Chante Wright could not identify him as the shooter. Because this argument was not

preserved in the PCRA court, it is waived. *See* Pa.R.A.P. 302(a). Moreover, Appellant does not argue that the PCRA court erred in denying his initial claim related to Cayanna Brown. Thus, no relief is due.

Third, Appellant contends "[t]rial counsel was ineffective for failing to move or argue at trial that [Appellant's] trial violated double jeopardy in violation of the Fifth Amendment of the United States Constitution and Article I, § 10 of the Pennsylvania Constitution." Appellant's Brief at 26. Appellant states that although he "did not receive a transcript of the jury selection proceedings from 2004, his notes and his recollection indicate that the jury was sworn . . . ." *Id.* Appellant thus claims that double jeopardy attached because the jury was sworn at the time of the *nolle prosse*. *Id.* at 27.

Our review is governed by the following principles:

> A *nolle prosequi* is a voluntary withdrawal by the prosecuting attorney of present proceedings on a particular bill of indictment. Pennsylvania Rule of Criminal Procedure 585 governs *nolle prosequi* applications, and provides in relevant part:
>
> > Upon motion of the attorney for the Commonwealth, the court may, in open court, order a *nolle prosequi* of one or more charges notwithstanding the objection of any person.
>
> Pa.R.Crim.P. 585(A). In evaluating a request for *nolle prosequi*, a court may consider two factors: (1) whether the Commonwealth's reason for the request is reasonable; and (2) whether the defendant has a valid speedy trial claim. **A *nolle prosequi* may be lifted at any time in the future, on appropriate motion, to revive the original charges.**
>
> [I]t is established that a trial court has discretion in deciding whether to grant or deny a *nolle prosequi* . . . .

*Commonwealth v. Goldman*, 70 A.3d 874, 878 (Pa. Super. 2013) (citations

and quotation marks omitted and emphasis added).

The PCRA court opined:

The jury was not sworn and the Commonwealth withdrew prosecution without prejudice since they were unable to procure eyewitness, Chante Wright, for trial and that was done on April 6, 2004.

During the hearing to reopen in front of Judge Hughes, to reopen the nol-pros, [Counsel] indicates that the jury was not sworn at that time and that is on the record from the motion to reopen. It is actually the Commonwealth's motion to vacate the entry of nol-pros.

The notes are April 20, 2007, pages 1 and 2. [Counsel] basically starts off with that the jury was not sworn in at that time. So there is no double jeopardy issue.

In order for there to be double jeopardy, the jury would have had to have been sworn in at that time. This was a nol-pros and it was a nol-pros without prejudice. So no jeopardy attached in this case. So that claim is meritless.

PCRA Hr'g at 11-12. We agree no relief is due.

Preliminarily, we note that the certified record transmitted on appeal

does not include the notes of testimony from the April 6, 2004 hearing. It is

well settled that the appellant bears the burden of "ensur[ing] the record

certified on appeal is complete in the sense that it contains all of the materials

necessary for the reviewing court to perform its duty." *Commonwealth v.*

*B.D.G.*, 959 A.2d 362, 372 (Pa. Super. 2008) (*en banc*) (citations omitted).

Thus, this issue is waived. *See id.* Similarly, Appellant's attempt to rely on

memory fails to establish that the PCRA court erred in finding jury selection did not start. Thus, no relief is due on this claim.

Fourth, Appellant contends that "[t]rial counsel was ineffective for failing to file a motion to dismiss pursuant to the Fifth and Sixth Amendments of the United States Constitution due to an eight year delay between the victim's death and the trial." Appellant's Brief at 27. Appellant asserts "that the delay from his initial arrest on July 18, 2002, until the *nolle-pros* of April 6, 2004 and the delay between the *nolle-pros* and the refiling of charges in 2007, were the product of intentional, bad faith, or reckless conduct by the prosecution in order to bolster its case." *Id.* at 28. He further contends that the PCRA court erred in analyzing his constitutional speedy trial claim under Pa.R.Crim.P. 600. *Id.* at 32.

It is well settled that

> [a] speedy trial analysis . . . mandates a two-step inquiry: (1) whether the delay violated Pennsylvania Rule of Criminal Procedure [600]; and, **if not**, then (2) whether the delay violated the defendant's right to a speedy trial guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section 9 of the Pennsylvania Constitution.

*Commonwealth v. Colon*, 87 A.3d 352, 356 (Pa. Super. 2014).

Although Appellant does not challenge the PCRA court's Rule 600 analysis, we note that the PCRA court opined:

> The argument, the real argument, would be in the time frame from the date of the nol-pros until the date of the second trial. So the nol-pros was 4/6/04. The commencement of the second trial was September 15, 2008. [Appellant's] argument is basically that [trial

c]ounsel was ineffective for failing to argue a Rule 600 or speedy trial motion.

At the time of the hearing to lift the nol-pros, [trial counsel], in effect, did argue a Rule 600 Motion even though it may not have been titled that but the first thing that [trial counsel] said to the [c]ourt was that the [c]ourt should not lift the nol-pros due to the time delay, that there was too much time that had passed in order to life the nol-pros.

So there was a hearing and a detective was called to testify at the particular hearing to indicate why the nol-pros could not have been lifted sooner because really [trial counsel's] argument was that the nol-pros could have been lifted probably right after, soon after the case had been nol-prossed because the witness had been located.

The case was nol-prossed because Chante Wright could not be located. She disappeared. She was located I guess sometime after the case was nol-prossed within a month.

Well, let me back up. She failed to appear for trial. She could not be located during the first trial. When the detectives went to look for her, she had been in school. She quit school. They could not find her at any of the addresses that they had for her.

They did locate her sometime in April after the nol-pros. At that time she refused to testify because she had been threatened. She indicated that she had been threatened by friends of [Appellant].

In order to really understand the situation here, one really has to look at the background or the surrounding circumstances of what was going on.

Along with Miss Wright, there were two other witnesses, eyewitnesses to the homicide. On December 25, 2000, one of the eyewitnesses, Mr. Morris, was killed by a gunshot wound to the back of the head.

Additionally, another man identified in the record as Malik, who had been present during the murder, was also shot in the back of the head the same day.

- 15 -

On December 26, 2000, an identifying eyewitness, Mr. Clinkscales, was shot several times in the back and chest. Mr. Clinkscales at that time was wearing a bulletproof vest and survived the shooting.

By the time of trial, Miss Wright was aware that all the other witnesses were killed. Miss Wright was the only living eyewitness and refused to testify. She indicated that she was in fear for her family and for herself. She refused to cooperate in any way.

However, in the interim, she was connected to someone—and I am not sure—I guess it was her boyfriend. She became connected to someone, who then was cooperating with the FBI, and as a result, that person and Miss Wright were relocated by the Federal Government as a result of another case separate from this one.

Upon her relocation, the U.S. Attorney's Office contacted homicide detectives and indicated to them that Miss Wright would now be available as a witness since she had a new identity, and was relocated, and was no longer in fear for her life.

At that point at which homicide detectives learned of that, they then went to the District Attorney's Office. The District Attorney's Office then petitioned to lift the nol-pros and reopen the case.

What we look at in the circumstances is whether the Commonwealth initially nol-prossed the case just because they were running out of time and they wanted to get an advantage and also, we look at the Commonwealth's due diligence and we look at the totality of the circumstances.

In this particular case, the first time that the case was nol-prossed was because the eyewitnesses could not be located. There could be no case without Miss Wright. The other eyewitnesses were killed and there was evidence that they were killed by [Appellant] or at the [Appellant's] behest.

So the reason the case was nol-prossed, the Commonwealth had a very valid reason to nol-pros the case. The time between 2004 and 2007 when the nol-pros was lifted, this witness still, for all intents and purposes, was unavailable because the witness was truly in fear for her life and this is not just words here. There is concrete evidence that witnesses were being killed. The witness refused to cooperate and [sic] really in fear for her life. Once the witness was no longer in fear for her life, the witness did, in fact, come forward and agree to cooperate.

The [c]ourt looks at the Commonwealth's due diligence in this particular matter. The Commonwealth did not have a witness until the time when the witness came forward and once they did, once the Commonwealth was informed that the witness had a new identity, was moved from the area and was willing to testify, the Commonwealth took the appropriate action to lift the nol-pros. The [c]ourt finds that the Commonwealth was duly diligent and that this was not any attempt to evade Rule 600 in this case.

The [c]ourt should note for the record that this [witness[4]] did actually come back, left her witness protection program just to come visit her dying grandmother and was killed, along with her friend. So her fears did come to fruition. Once she agreed to cooperate, she was, in fact, murdered.

\* \* \*

The [c]ourt finds that counsel was not ineffective.

PCRA Hr'g at 15-21.

Turning to Appellant's constitutional claim,

"The Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution guarantee a criminal defendant the right to a speedy trial." These state and federal constitutional rights have long been held to be coextensive by our Supreme Court.

---

[4] The PCRA court notes that there is a typographical error in the notes of testimony, *viz.*, "this defendant" should state "this witness." **See** PCRA Ct. OP. at 3 n.1.

- 17 -

The standard we apply in determining if an [a]ppellant's constitutional right to a speedy trial has been violated is the balancing test first articulated in *Barker v. Wingo*, 407 U.S. 514 . . . (1972). Under the *Barker* standard, we first examine the threshold question of whether "the delay itself is sufficient to trigger further inquiry." If the delay is sufficient to trigger further inquiry, we then "balance the length of the delay with the reason for the delay, the defendant's timely assertion of his right to a speedy trial, and any resulting prejudice to the interests protected by the right to a speedy trial."

*Commonwealth v. Miskovitch*, 64 A.3d 672, 678–79 (Pa. Super. 2013).

When evaluating the reasons for the delay, it is well settled that

A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Commonwealth v. Glover*, 458 A.2d 935, 937-38 (Pa. 1983).

Instantly, the length of the delay is sufficient to trigger further inquiry. However, as set forth by the PCRA court, the Commonwealth acted with due diligence and Chante Wright's unwillingness to testify presents a valid reason for the delay. Thus, the Commonwealth set forth a reasonable explanation for the delay, and Appellant has not set forth any cogent allegation to rebut that conclusion. We acknowledge Appellant now asserts that a possible alibi witness died during the pretrial delay. However, he does not allege, nor does the record support any conclusion that Appellant had informed trial counsel of

the existence of this alleged witness.  Accordingly, we agree with the PCRA court that trial court cannot be deemed ineffective for failing to file a motion to dismiss the charges for the pretrial delay in this case.[5]  **See Koehle**r, 36 A.3d at 1131-32.

Fifth, Appellant avers that "[t]rial counsel was ineffective for failing to seek a mistrial upon learning that Judge Hughes was placed under protective detail."  Appellant's Brief at 33.  As a prefatory matter, we consider whether Appellant has waived this issue on appeal.

Appellant's argument is devoid of any citation to legal authority.  "When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived."  **B.D.G.**, 959 A.2d at 371-72; **see also** Pa.R.A.P. 2119(a)-(b).  Therefore, this issue is waived.  **See B.D.G.**, 959 A.2d at 371-72.

Sixth, Appellant claims

> trial counsel was ineffective for failing to argue or preserve for appeal the following: that the trial court violated [Appellant's] due process rights under the Fifth and Fourteenth Amendments of the United States Constitution and in violation of Article I, § 9 of the Pennsylvania Constitution when the court told the jury to disregard the only piece of evidence [Appellant] had offered in his own defense and thereby deprived [Appellant] of his right to defend himself.

Appellant's Brief at 35.  Appellant avers:

---

[5] We may affirm the PCRA court's order on any basis apparent in the record. [cite].

- 19 -

After the jury had begun deliberations based on a photograph of Chante Wright both sides stipulated was taken on December 3, 2007, the [t]rial [c]ourt on her own initiative based on information from Detective Delvecchio that the photograph was taken in 2003 or 2005 and over the objection of [Appellant's] counsel, reopened the record to introduce testimony from Dorothy Harris, custodian of records for the Philadelphia Prison System that, based on the prison records, sign-in logs and computer files, Chante Wright did not visit the prison in December of 2007. The records indicated that Cayanna Brown was at the prison on December 3, 2007. The [t]rial [c]ourt informed the jury that the photograph that was admitted by stipulation was not taken on December 3, 2007, and then instructed the jury: "The testimony was not accurate and must be completely disregarded by you."

*Id.* (citation to the record omitted).

On direct appeal, this Court opined:

[A]ppellant argues that the trial court erred in reopening the record in order to allow the presentation of additional evidence. Appellant presented evidence that Wright had come to visit him in prison in 2007. Appellant also introduced a photograph purportedly taken December 3, 2007, memorializing the visit. Defense counsel used this evidence in his closing argument to the jury to make the case that Wright must have visited [A]ppellant in prison to tell him that she was going to tell the truth, *i.e.*, that he did not shoot Williams. (Notes of testimony, 9/25/08 at 66.) The trial court further described this evidence as follows:

[A]ppellant offered an undated photograph of Chante Wright which purported to memorialize a visit to [A]ppellant while he was in custody. N.T. 9/25/08, pgs. 13-14; 22-23. It was asserted that the photograph was taken on December 3, 2007, while Chante Wright was in federal witness protection. *Id.* It was the sole evidence offered by [A]ppellant and its only objective was to undermine the credibility to be accorded Chante Wright's testimony. After the record was closed and the jury began deliberations, the trial court was advised that the photograph in fact was not

- 20 -

taken on December 3, 2007. N.T. 9/29/08, pgs. 85-86. The prison records reveal that Wright only visited [A]ppellant on April 14, 2003 and April 27, 2005; both visits were long before her cooperation with law enforcement and her entry into federal witness protection. N.T. 9/29/08, pg. 108.

Trial court opinion, 4/22/10 at 13.

The trial court reopened the record to permit the Commonwealth to call Dorothy Harris ("Harris"), the custodian of records for the Philadelphia prison system. Harris testified that Wright did not visit [A]ppellant in 2007. (Notes of testimony, 9/29/08 at 98-102.) The trial court then re-charged the jury and they reached a verdict the following day, September 30, 2008.

\* \* \*

We find that the trial court did not abuse its discretion in reopening the case to present the testimony of Harris. The parties had entered into a stipulation that the photograph depicted Wright vising [A]ppellant in prison on December 3, 2007. (Notes of testimony, 9/25/08 at 13-14.) This photograph was admitted into evidence and submitted to the jury. (**Id.** at 22-23, Exhibit D-2.) Subsequently, during deliberations, the trial court discovered that the photograph was a misrepresentation of fact because Wright did not visit [A]ppellant in 2007. Her last visit was in 2005, before she agreed to cooperate with authorities and entered the federal witness protection program. At this point, the trial court was well within its discretion to reopen the case and inform the jury that the photograph was false, particularly where the parties had stipulated to its genuineness and the jury was required to accept as fact that Wright had visited [A]ppellant on December 3, 2007. Appellant relied on the photograph to attack Wright's credibility, and the trial court had to reopen the case to correct the record and to prevent a miscarriage of justice.

**Bey**, 922 EDA 2009, at 9-12.

- 21 -

Thus, contrary to Appellant's assertions, the underlying claim was preserved for appeal and denied on the merits. Thus, Appellant's assertion of ineffectiveness with respect to this claim lacks arguable merit.

Seventh, Appellant claims "[t]rial counsel was ineffective for failing to lodge formal objections to the jury instructions, which instructions were inaccurate and confusing in defining consciousness of guilt, reasonable doubt, and the elements of the crime(s) of criminal homicide." Appellant's Brief at 37. Appellant's brief is devoid of any citation to legal authority in this regard. Therefore, this issue is waived.[6] *See B.D.G.*, 959 A.2d at 371-72; *see also* Pa.R.A.P. 2119(a)-(b).

Lastly, appellant argues that "[t]he PCRA court erred in not conducting an evidentiary hearing before dismissing [Appellant's] PCRA where there were facts and witnesses outside the record supporting [Appellant's] claims of ineffective assistance of counsel." Appellant's Brief at 45.

"The controlling factor in determining whether a petition may be dismissed without a hearing is the status of the substantive assertions in the

---

[6] On August 24, 2017, Appellant filed an application to file a post-submission communication referring to supplemental authority, namely, a United States Eastern District of Pennsylvania decision in *Brooks v. Gilmore*, No. 15-5659 (E.D. Pa. Aug. 11, 2017). According to Appellant's application, this decision found a similar reasonable doubt instruction was faulty and granted federal habeas corpus relief. However, Appellant may not cure a defect in his brief by way of a post-submission communication, and, in any event, the decisions of a federal district court are not binding on this Court. *Commonwealth v. Giffin*, 595 A.2d 101, 107 (Pa. Super. 1991).

petition." ***Commonwealth v. Payne***, 794 A.2d 902, 906 (Pa. Super. 2002) (citation omitted).

We discern no error in the PCRA court's finding that Appellant's claims were meritless. Therefore, the court did not err in dismissing the petition without an evidentiary hearing. ***See id.*** For all of the foregoing reasons, we affirm the order of the PCRA court dismissing Appellant's PCRA petition.

Order affirmed. Appellant's application for relief denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/14/2017