IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Woods at Naamans          :
Homeowners Association,      :
                     Appellant     :
                               :
            v.               : No. 947 C.D. 2022
                               : Submitted: May 26, 2023
Robert Cavoto and Rae Cavoto   :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE LORI A. DUMAS, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE DUMAS                                FILED: April 1, 2024

Woods at Naamans Homeowners Association (Woods) appeals from the order entered by the Court of Common Pleas of Delaware County (trial court), which granted the petition to open and/or strike judgment filed by Robert Cavoto and Rae Cavoto (Cavotos). Woods challenges the trial court's reasoning in opening or striking the judgment. We quash.

## I. BACKGROUND[1]

In July 2021, Woods sued the Cavotos before the magisterial district court in Delaware County. *See generally* Docket No. MJ-32249-CV-108-2021. Because the magisterial district court record was not transmitted to this Court, the complaint filed in the magisterial district court is not of record. Therefore, we are

---

[1] Because of our disposition, we glean the undisputed facts from the record transmitted to this Court, which does not include the complete record from the magisterial district court. *See generally* Docket No. MJ-32249-CV-108-2021; *Commonwealth v. B.D.G.*, 959 A.2d 362, 372 (Pa. Super. 2008) (explaining that because our review is limited to the record, what is not in the record "does not exist for purposes of our review" (cleaned up)). We may also use the notice dates and cite to unreported opinions to the extent we find them persuasive. *See* Pa.R.Civ.P. 236; 210 Pa. Code § 69.414(a); *Marshall v. Se. Pa. Transp. Auth.*, 300 A.3d 537, 540 n.2 (Pa. Cmwlth. 2023).

unaware of the claims raised by Woods.

Nevertheless, the parties do not dispute that the Cavotos fell behind on paying their homeowners' association fees to Woods. Pet. to Open and/or Strike J., 4/4/22, ¶¶ 8, 11 (Pet.). The parties, however, dispute whether they settled the underlying suit in September 2021. *Compare id.* ¶ 12, *with* Resp. in Opp'n to Pet. to Open and/or Strike J., 4/25/22, ¶ 12 (Resp.) (denying settlement and noting the Cavotos failed to produce a fully executed agreement; regardless, asserting the Cavotos did not comply with the terms).

We discuss this below, but on September 15, 2021, Woods' counsel emailed a proposed settlement agreement to the Cavotos' counsel. *See* Ex. A to Pet. In relevant part, the settlement agreement states that Woods "intends to proceed with the" magisterial district court action "to obtain judgment." *Id.* Nevertheless, if the Cavotos "are in agreement with the terms of this agreement you [*i.e.*, the Cavotos,] do not need to attend the scheduled hearing on September 16, 2021." *Id.* Should the Cavotos "remain compliant with the terms set forth in this agreement, [Woods] will not act on the judgment and stay all collection efforts until your [*i.e.*, the Cavotos,] payments have satisfied the judgment amount." *Id.*

The next day, September 16, 2021, the magisterial district court docket reflects entry of judgment for $1,867.01.[2] *See* Docket No. MJ-32249-CV-108-2021. The judgment itself does not state whether it is confessed, default, or otherwise. *See* J.

---

[2] Per the docket, the civil judgment was for $1,740 and filing fees of $127.01, for a total of $1,867.**01**. *See* Docket No. MJ-32249-CV-108-2021. Woods' account history for the Cavotos reflects a balance owed of $1,867.**91** on September 14, 2021. Exs. A, B to Pet. Of the amount $1,867.**91**, $730 was for past due association fees and the remaining amount was for legal fees. *Id.* The disputed settlement agreement similarly reflects a "delinquent balance totaling $1,867.91." Ex. A to Pet. In other words, although judgment was entered in the amount of $1,867.**01**, the record documents some minor discrepancies in the actual amount owed.

2

On September 27, 2021, Woods' counsel emailed the Cavotos' counsel, stating that Woods has not received any settlement agreement. Ex. A to Resp. Although the Cavotos were apparently still represented by counsel, Woods' counsel mailed the Cavotos directly on October 27, 2021, advising them that the magisterial district court should have sent notice of the judgment and that the Cavotos failed to appeal the judgment. Ex. B to Resp. Woods' counsel requested that the Cavotos remit the judgment amount of $1,867.01. *Id.*

On October 29, 2021, Woods received a $560 payment from the Cavotos. Pet. ¶ 17; Resp. ¶ 17; Ex. B to Resp. (account history).[3] Woods, however, disputes that the payment was prompted by the parties' settlement agreement. Resp. ¶ 17.

In January 2022, Woods transferred the judgment to the trial court. Praecipe to Transfer J., 1/18/22. The trial court formally entered judgment and notified all parties.[4] J., 1/21/22. The parties unsuccessfully attempted to settle. *See* Resp. ¶ 25 & Ex. C.[5]

---

[3] As discussed below, the proposed settlement agreement provided for payment within ten days of the first of the month, starting October 1, 2021. *See* Ex. A to Pet.

[4] The judgment was entered on the judgment index, which we note in passing reflects several outstanding liens and judgments against the Cavotos. Woods then requested, and the trial court issued, a writ of execution for $1,307.01, plus interest. Writ of Exec., 2/7/22. The difference between the judgment amount of $1,867.01, and the execution amount of $1,307.01 is $560, which reflects the aforementioned October 29, 2021 payment.

The writ for execution identified a particular bank as garnishee. The bank, however, did not garnish the Cavotos' account but rather the account of Mr. Cavoto's son, who shares the same first name. *See* Pet. ¶¶ 27-31; Notes of Testimony (N.T.) Hr'g, 8/9/22, at 7. As a result, the son filed a claim to exempt his bank account from garnishment. Pet. ¶ 30. Woods discontinued the attachment of the son's account. Praecipe to Discontinue Attach., 3/18/22; Order, 3/21/22. The parties dispute whether Woods' counsel fees associated with the erroneous garnishment were added to the amount owed by the Cavotos.

[5] To be clear, this negotiation was separate from the disputed September 2021 settlement agreement. In February 2022, Woods' counsel emailed the Cavotos' counsel acknowledging the Cavotos' offer to "make a lump sum payment of $1,500." Ex. C to Resp. Woods' counsel rejected

In April 2022, the Cavotos filed a petition to open/strike judgment, which also requested reinstatement of the parties' settlement agreement and counsel fees. *See generally* Pet. The Cavotos claimed they agreed to pay Woods $1,867.01, in monthly installments of $80 per month. *Id.* ¶ 12.[6] The Cavotos averred they signed and returned the agreement but also acknowledged Woods' position that it never received the executed agreement. *Id.* ¶ 14. Nevertheless, the Cavotos maintained that in reliance on the agreement, the Cavotos made an initial payment of $560, which Woods accepted in October 2021. *Id.* ¶ 17. In their view, their $560 lump-sum payment represented the prepayment of seven, $80 monthly installments. *Id.* ¶ 19. Accordingly, the Cavotos requested that the trial court open or strike the judgment and reinstate the settlement agreement. *Id.* ¶ 50.

In support, the Cavotos attached the disputed, unexecuted settlement agreement. Ex. A to Pet. In relevant part, the agreement stated that the Cavotos would pay $80 per month starting on October 1, 2021, for the back-owed amount. *Id.* The agreement also provided that Woods would continue to proceed with the magisterial district court action. *Id.* If the Cavotos agreed with the proposed agreement, then they need not appear at the September 16th hearing. *Id.*

Woods filed a response in opposition, which disputed any September settlement. *See* Resp. Further, Woods argued that the Cavotos breached the terms of the settlement agreement. *See, e.g., id.* ¶¶ 15-16. For example, Woods asserted that under the agreement, even if the Cavotos made a larger $560 payment, they were still required to make their $80 payment the following month. *Id.* ¶ 16. Because

---

the offer because the amount owed allegedly increased to $4,648.98, a sum purportedly reflecting $2,002.41 in association fees, $2,314.77 in legal fees, $300 in "satisfaction," and $31.80 in interest. *Id.* Woods' counsel also asserted that in March 2022, counsel sent two proposed settlement agreements to the Cavotos. Resp. ¶ 25.

[6] The Cavotos' petition misstated the judgment amount as $1,867.**91**. The petition also attached the Cavotos' unsworn verification, citing 18 Pa.C.S. § 4901, instead of Section 4904.

the Cavotos failed to make any such $80 payment, Woods maintained that the Cavotos breached the agreement. *Id.*

The trial court scheduled a hearing, at which the Cavotos' counsel argued as follows. The Cavotos' counsel reiterated that Woods proposed a settlement agreement that was either sent to the office of the Cavotos' counsel "and/or received by" the Cavotos. N.T. Hr'g at 4. Per the Cavotos' counsel, "[w]e agreed among counsel, but it wasn't signed right away." *Id.* (cleaned up). Woods wanted to move forward with obtaining a default judgment from the magisterial district judge. *Id.* But "under the terms of the agreement [Woods] agreed that they [sic] would do nothing with the judgment unless there was some default or breach on the part of" the Cavotos. *Id.* The Cavotos' counsel stated that if called to testify, Mr. Cavoto "would testify that he went to his lawyer's office with a signed copy of the agreement, handed it to them. [Counsel] was just sort of tangentially helping at this point, [and counsel] wasn't directly involved." *Id.* Nevertheless, the Cavotos' counsel stated, "I don't have a copy of it, they claim not to have it and that was the original sign [sic]." *Id.* at 4-5.

Nevertheless, in support of their position that the parties settled, the Cavotos' counsel noted that the agreement provided that if they agreed, the Cavotos did not need to appear before the magisterial district court for the scheduled September 16th hearing. *Id.* at 5. In counsel's view, because the Cavotos did not appear at that hearing, their act "manifests terms of acceptance." *Id.* In further support, the Cavotos' counsel points out that Woods adjusted the amount owed in "their own internal paperwork" to reflect the judgment amount of $1,867.01. *Id.*

Woods' counsel countered that the Cavotos untimely filed their petition to strike/open judgment six months after judgment was entered in the magisterial

5

district court. *Id.* at 8-9. Woods' counsel also challenged the merits of the Cavotos' petition and maintained that the Cavotos conceded they failed to timely pay their association fees. *Id.* At the conclusion of the hearing, the court opined that Woods was "quite overzealous" and that "in addition to opening the judgment," it would award $1,500 in counsel fees to the Cavotos. *Id.* at 9.

The court's written order stated that "[a]ny [judgment] entered against [the Cavotos] in this matter is hereby opened or stricken." Order, 8/12/22, ¶ 1. The court further ordered that the "settlement agreement reached by the parties and as reflected in the letter and draft agreement . . . is to be reinstated as modified herein." *Id.* ¶ 2. The court modified the agreement to reflect a balance owed of $1,307.97, which is the settlement amount minus the Cavotos' $560 payment. *Id.* ¶ 2a. The court ordered the Cavotos to continue to pay the adjusted balance at $80 month and could prepay without penalty. *Id.* ¶¶ 2b-2c. The court "waived" any counsel fees or other charges imposed by Woods and its counsel after September 15, 2021, *i.e.*, the date the parties purportedly executed the settlement agreement. *Id.* ¶ 2d. Finally, the court imposed $1,500 in counsel fees against Woods, although the parties agreed that any fees owed by Woods "may be credited towards the adjusted balance" of $1,307.97.[7] *Id.* ¶ 3.

Woods timely appealed to this Court. Woods did not request permission before appealing. The trial court did not request a Pa.R.A.P. 1925(b) statement but filed a Pa.R.A.P. 1925(a) opinion. The docket reflects no subsequent entry of judgment.

## II. ISSUES

Woods raised several issues challenging the opening or striking of the judgment and the award of counsel fees, which we need not summarize.

---

[7] Plainly, it appears the Cavotos may owe nothing.

6

### III. DISCUSSION[8]

Because of our disposition, we need not summarize Woods' arguments.[9] There are several categories of judgments, including consent, default, and confession. Such judgments, in turn, may be challenged by filing a single petition to open or strike the judgment. *See, e.g.*, Pa.R.Civ.P. 206.1(b), 2959. Opening a judgment is distinct from striking a judgment. *Cintas Corp. v. Lee's Cleaning Servs. Inc.*, 700 A.2d 915, 918 (Pa. 1997) (citation omitted).

In considering whether to strike the judgment, the court must accept as true "all well-pleaded facts." *Id.* (citation omitted). But not all facts: "a court may only look at the facts of record at the time the judgment was entered to decide if the record supports the judgment." *Id.* at 919 (citation omitted); *Linett v. Linett*, 254 A.2d 7, 10 (Pa. 1969) (holding that the court, whether trial or appellate, "will only look at what was in the record when the judgment was entered in its search for defects"). "A petition to strike can only be granted if a fatal defect appears on the face of the record," at the time judgment was entered. *Cintas*, 700 A.2d at 919 (citation omitted).[10]

"In contrast, a petition to open a judgment is an appeal to the equitable powers of the court," and we review the court's decision for an abuse of discretion. *Id.* The petitioner must (1) promptly file the petition to open; (2) excuse the failure

---

[8] We may *sua sponte* inquire into whether this Court may exercise its appellate jurisdiction. *In re Jordan*, 277 A.3d 519, 528 (Pa. 2022).

[9] We note, however, that Woods cites to outdated jurisprudence permitting an interlocutory appeal from an order *granting* a petition to open/strike judgment. *See* Woods' Br. at 8 (citing *Wolfskill v. Egan*, 504 A.2d 326, 327 (Pa. Super. 1986)).

[10] For example, in the context of striking a confessed judgment, the court's review is limited to the judgment-holder's complaint and documents containing the confessed judgment clauses. *Resolution Tr. Corp. v. Copley Qu-Wayne Assocs.*, 683 A.2d 269, 273 (Pa. 1996). In resolving whether to open a default judgment, an appellate court would address whether a complaint was properly served in accordance with municipal court rules. *U.S. Dep't of Hous. & Urb. Dev. v. Dickerson*, 516 A.2d 749, 750-51 (Pa. Super. 1986) (reviewing the record).

7

to appear, timely answer, or otherwise dispute the judgment; and (3) "show a meritorious defense." *Id.* (citations omitted). A petition to open "challenge[s] the truth of factual averments in the record at the time judgment was entered . . . ." *Id.* (citation omitted).

An order *denying* a petition to open or strike judgment is an appealable order as of right. Pa.R.A.P. 311(a)(1). An order *granting* a petition to open or strike judgment is not appealable as of right under Rule 311(a)(1). *See Joseph Palermo Dev. Corp. v. Bowers*, 564 A.2d 996, 997 (Pa. Super. 1989) (explaining that Rule 311 had formerly permitted such appeals before it was amended, effective July 1, 1989). The *Bowers* Court explained that an "order opening judgment . . . does not end the litigation, nor preclude participation by certain parties in the litigation, nor result in the irreparable loss of the claim. On the contrary, this order opens up the possibility of further litigation between the parties, while causing neither irreparable loss nor prejudice to" the aggrieved party. *Id.* at 998. "Review of the correctness of the trial court's action in opening the judgment is merely postponed to a later date." *Id.* Thus, in *Bowers*, the Superior Court quashed an appeal from an order granting a petition to open a confessed judgment. *Id.* at 997.

For example, the Superior Court quashed as "interlocutory that portion of the appeal which challenge[d] the trial court's decision to open the confessed judgment" because "[n]o appeal as of right may be taken from the trial court's order opening a confessed judgment." *Hagel v. United Mower Sales & Serv.*, 653 A.2d 17, 20 (Pa. Super. 1995); *accord Motley Crew, LLC v. Bonner Chevrolet Co.*, 93 A.3d 474, 475 n.4 (Pa. Super. 2014) (same); *In & Out Enters., LLC v. AKF Reporters, Inc.* (Pa. Super., No. 1276 WDA 2021, filed March 29, 2022), 2022 WL 907242 (quashing appeal from an order striking a confessed judgment); *Carter v. Cornerstone Constr.*

*Servs.* (Pa. Cmwlth., No. 1174 C.D. 2016, filed June 6, 2017), 2017 WL 2438564 (quashing appeal from an order granting a motion to strike the judgment).[11]

In *Carter*, this Court quashed an appeal from an order that granted the appellant's motion to strike judgment. *Carter*, slip op. at 1, 2017 WL 2438564, *1. The *Carter* Court had ordered the parties to file supplemental briefs addressing the appealability of the order under Pa.R.A.P. 311(a)(1). *Carter v. Cornerstone Constr. Servs.* (Pa. Cmwlth., No. 1174 C.D. 2016, filed Nov. 18, 2016) (order). The *Carter* Court explained that Rule 311(a)(1) "eliminated interlocutory appeals of right from orders opening, vacating, or striking off a judgment . . . ." *Carter*, slip op. at 3-4, 2017 WL 2438564, *2 (cleaned up). The *Carter* Court, however, acknowledged a contrary Superior Court case. *Id.* (citing *Cargitlada v. Binks Mfg. Co.*, 837 A.2d 547, 549 n.2 (Pa. Super. 2003), as "deciding on [the] merits appeal from trial court order granting motion to strike judgment where trial court's order disposes of all claims against all parties" (cleaned up)).

In *Cargitlada*, the Superior Court addressed a court of common pleas judgment and subsequent order striking the judgment.[12] *Cargitlada*, 837 A.2d at 548-49. The Court acknowledged that under Rule 311(a)(1), an order granting a motion to strike is not appealable as of right, but that the court's order "appears to be final in that it disposes of all claims of all parties." *Id.* at 549 n.2. The Court reversed the order striking the judgment because the trial court erred by considering

---

[11] We add that one treatise explained that because Pa.R.A.P. 311(a)(1) was revised, "the body of case law interpreting and applying Rule 311(a)(1) to permit appeals from orders opening judgments, orders vacating judgments, and orders striking off judgments, has been superseded." 20 West's Pa. Appellate Prac. § 311:10 (2023-2024 ed.) (footnotes omitted). Woods' brief, including the statement of jurisdiction, does not address Pa.R.A.P. 311(a)(1). *See* Woods' Br. at 1.

[12] In this case, the complaint reflects claims for strict liability, negligence, and breach of implied warranties. Compl., *Cargitlada v. Binks Mfg. Co.* (C.C.P. Phila., No. 002981, filed Aug. 26, 1999), 1999 WL 34798080.

The jury apparently found for plaintiff on all claims.

new information outside the original record. *Id.* at 550-51. Thus, the Superior Court reversed the order striking the judgment, but remanded to have the trial court consider the merits when "viewed as a petition to open the judgment." *Id.* at 551.

Instantly, the trial court did not strike the judgment. It could not strike the judgment because striking the judgment requires examining the "facts of record at the time the judgment was entered to decide if the record supports the judgment." *Cintas*, 700 A.2d at 919 (citation omitted). The trial court did not enter judgment itself, as the magisterial district court transferred the judgment. The trial court also does not have Woods' complaint, which was filed in the magisterial district court.

Instead, the trial court's order opened the judgment. The order opened judgment because the Cavotos' basis for relief was based on facts outside of the record: the parties' disputed settlement agreement. *Cf. Cargitlada*, 837 A.2d at 550-51. To paraphrase *Bowers*, the correctness of the trial court's action in opening judgment is postponed until such time as the trial court enters judgment adverse to Woods on the claims raised in its complaint—a complaint that is not of record. *See Bowers*, 564 A.2d at 998. *Cf. Cargitlada*, 837 A.2d at 550-51 (reflecting review of the entire record). Because the complaint is not of record, ordering supplemental briefing, as we did in *Carter*, could not resolve whether the instant order disposed of all claims against all parties. *See Carter*, slip op. at 3, 2017 WL 2438564, *2. Regardless, even if the complaint was of record, we emphasize that the court opened the judgment entered thereupon. In this procedural context, the court must enter judgment or an appropriate order before this Court may consider the merits. *See Bowers*, 564 A.2d at 997-98.[13]

_____

[13] The dissent disagrees, reasoning that finality is either self-evident or, alternatively, that we should order supplemental briefing. As for the former, we explain why we cannot presume finality from documents not of record. As for the latter, supplemental briefing entails the expenditure of additional party resources—resources that would be expended despite this Court's

## IV. CONCLUSION

For these reasons, we quash Woods' appeal from the trial court's August 12, 2022 order.

_____
LORI A. DUMAS, Judge

---

inevitable quashal. Because the trial court opened judgment, the parties must praecipe for entry of judgment, request an appropriate determination of finality, request permission to appeal, or litigate outstanding claims. *See generally* Pa.R.A.P. 312, 313, 1311.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Woods at Naamans                       :
Homeowners Association,                 :
                          Appellant     :
                                        :
          v.                            : No. 947 C.D. 2022
                                        :
Robert Cavoto and Rae Cavoto            :

# **O R D E R**


          AND NOW, this 1st day of April, 2024, we QUASH the appeal filed by
Woods at Naamans Homeowners Association from the order entered on August 12,
2022 by the Court of Common Pleas of Delaware County.


                         _____
                         LORI A. DUMAS, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Woods at Naamans Homeowners : 
Association, : 
                      Appellant : 
                       : 
           v. :   No. 947 C.D. 2022 
                    :   Submitted: May 26, 2023 
Robert Cavoto and Rae Cavoto : 

**BEFORE:**    **HONORABLE RENÉE COHN JUBELIRER,** President Judge
                  **HONORABLE CHRISTINE FIZZANO CANNON,** Judge
                  **HONORABLE LORI A. DUMAS,** Judge

**OPINION NOT REPORTED**

**DISSENTING OPINION BY
PRESIDENT JUDGE COHN JUBELIRER**         **FILED: April 1, 2024**

The majority holds, sua sponte, that the Order of the Court of Common Pleas of Delaware County (trial court) is an unappealable interlocutory order over which we lack jurisdiction and quashes the appeal of Woods at Naamans Homeowners Association (Woods) on this basis. I believe the parties did not make this argument because this Order is **not** an unappealable interlocutory order, but is, in fact, **a final order**, and, thus, appealable as it disposes of all claims and all parties. It is, therefore, improper to quash this appeal. Before this Court sua sponte determines otherwise, I would issue a rule to show cause to at least **give the parties** an opportunity to address whether there is anything remaining for the trial court to do. For these reasons, I must respectfully dissent.

Woods filed an action against Robert Cavoto and Rae Cavoto (the Cavotos) for unpaid homeowners' association dues. A Magisterial District Judge (MDJ)

entered a judgment against the Cavotos in the amount of $1,867.01, and Woods transferred this judgment to the trial court. The Cavotos then filed a petition to open and/or strike the judgment (Petition). In addition to asking the Court to open/and or strike the Judgment, in the Petition, the Cavotos **also** asked the trial court to "confirm[], reinstate[,] and enforce[]" a settlement agreement, which was attached to the Petition, and to award attorneys' fees – thus asking the trial court to resolve the merits. (Reproduced Record (R.R.) at 32a, 36a.) Woods filed a response in opposition to the Petition.

Following a hearing, the trial court granted the Petition and issued the Order, which provides:

> 1. Any Judg[]ment entered against the [Cavotos] in this matter is hereby opened or stricken.
>
> 2. The settlement agreement reached by the parties and as reflected in the letter and draft agreement attached to the Petition as Exhibit "A" and dated September 15, 2021[,] is to be reinstated as modified herein.
>
> > a. The balance due shall be adjusted to or set at $1,307.97. That is the [September 15, 2021] balance of $1,867.91 less the payment received of $560.00.[1]
> >
> > b. The [Cavotos] shall pay off the adjusted balance at the rate of $80.00/mo[nth]. . . .
> >
> > c. The [Cavotos'] first payment shall be due on the first day of the month immediately following the entry of this Order. [The Cavotos] may prepay without penalty.
> >
> > d. Any attorney fees or other charges assessed by [Woods] or [Woods'] counsel after [September 15, 2021,] and before the date of this Order are hereby waived.

---

[1] We recognize that the cents of the adjusted balance due does not match payment received.

[e.] All other terms of the [September 15, 2021] agreement/settlement not inconsistent herewith shall remain in full force and effect.

3. [Woods] shall pay or reimburse the [Cavotos] reasonable attorney fees in the amount of $1,500, within 30 days of the date of this Order. By agreement of all parties the attorney fees due [to] the [Cavotos] may be credited towards the adjusted balance due set forth in paragraph 2 above or to any future [] dues that may be assessed by [Woods].

(Order ¶¶ 1-3.)

Thus, the trial court not only opened the judgment, but in paragraphs 2 and 3, gave to the Cavotos the relief they had requested, including reinstating a modified settlement agreement, with specifics as to how it should be implemented, and awarding attorneys' fees. The trial court's order, which is on appeal to this Court, thus is not merely an order "opening a judgment."

The general rule is set forth in Rule 341(a) of the Pennsylvania Rules of Appellate Procedure that "an appeal may be taken as of right **from any final order** of a government unit or trial court." Pa.R.A.P. 341(a) (emphasis added). The Rule defines a final order as one that "disposes of all claims and of all parties." Pa.R.A.P. 341(b)(1).

The majority cites *Carter v. Cornerstone Construction Services* (Pa. Cmwlth., No. 1174 C.D. 2016, filed June 6, 2017), to support its decision to quash Woods' appeal. In *Carter*, this Court quashed an appeal from an order granting a motion to strike a judgment on the basis that it was **not** a final order. However, while the Court in *Carter* raised the issue of appealability sua sponte, **we ordered the parties to submit supplemental briefing regarding appealability <u>before</u> resolving the issue and quashing the appeal**. *Id.*, slip op. at 3. Notably, *Carter* cited *Cargitlada v.*

RCJ - 3

*Binks Manufacturing Company*, 837 A.2d 547, 549 n.2 (Pa. Super. 2003),[2] for the proposition that when a trial court's order disposes of **all claims against all parties**, i.e., it is a final order, the Court **may review the merits of that order <u>even though the order strikes a judgment</u>**. *Carter*, slip op. at 3-4. In *Carter*, we explained that "[b]y its nature, an order striking a default judgment is not a final order that disposes of the matter. Instead, such an order '**annuls** the original judgment and the parties are left as if no judgment had been entered.'" *Carter*, slip op. at 4 (quoting *Resolution Tr. Corp. v. Copley Qu-Wayne Assocs.*, 683 A.2d 269, 273 (Pa. 1996). (emphasis added).).

The majority also cites *Joseph Palermo Development Corporation v. Bowers*, 564 A.2d 996, 997 (Pa. Super. 1989), for the proposition that the trial court opened the judgment here and did not strike it. In *Bowers*, the Superior Court reiterated the important point that

> Rule 311 [(relating to interlocutory appeals as of right)] is consistent with the general principle embodied in [] Rule 341, . . . that an appeal may be taken as of right from any final order which **ends litigation**, or **disposes of an entire case**, or **effectively puts certain parties out of court**, or is an issue which if review were postponed would result in the **irreparable loss of the claim**.

*Id*. at 997-98 (emphasis added). Critically, in its conclusion to quash the appeal therein because the relevant order opened a judgment and "ha[d] the **procedural effect only of postponing consideration** of [the] claim," the Superior Court stated that Rule 311 shall apply "**unless to deny review would result in the irrevocable loss of a litigant's rights**." *Id*. at 998 (emphasis added).

---

[2] "In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

In this case, the Order is more than an "annulment," as the order was in *Carter*, or merely a "postponing" of Woods' claims, as the order was in *Bowers*, because the Order entered here resolves the issues between parties. Stated another way, here the parties are not left as though no judgment had been entered, as in *Carter*, or a postponement of a claim, as in *Bowers*, but instead, with a **new judgment** entered imposing new obligations upon the parties. The Order reinstates the settlement agreement, modifies the payment schedule, waives attorneys' fees awarded to Woods, and awards attorneys' fees to the Cavotos – it awards **all the relief requested** in the Petition. (Order ¶¶ 2-3 ("[The] settlement agreement reached by the parties **and as reflected in the letter and draft agreement attached to the Petition** as Exhibit "A" and dated September 15, 2021[,] is to be **reinstated as modified herein**.") (emphasis added).) As the majority notes, the Cavotos may now owe Woods nothing because the trial court ordered Woods to credit any fees towards the Cavotos' balance and future dues owed, leaving Woods with no further cause of action. *Woods at Naamans Homeowners Ass'n v. Cavoto* (Pa. Cmwlth., No. 947 C.D. 2022, filed April 1, 2024), slip op. at 6 n.7. By reinstating the settlement agreement, reducing the balance owed by the Cavotos' lump sum payment, waiving Woods' attorneys' fees, ordering Woods to pay the Cavotos' $1,500 in attorneys' fees, and acknowledging the parties' agreement that this $1,500 be credited toward the Cavotos' remaining balance (thereby reducing it to $0) and future dues, it is unclear what remains outstanding following the trial court's Order. Thus, it is immaterial whether the trial court opened or struck the judgment as this Order **resolves all claims against all parties, which is the critical inquiry here,** and, therefore, would constitute a final order reviewable by the Court at this time, consistent with Pa.R.A.P 341(b)(1); *Bowers*, 564 A.2d at 997-98; *Cargitlada*, 837

RCJ - 5

A.2d at 549 n.2.[3]  Our quashal of this appeal in my mind, leaves the parties without any further recourse.

It is imperative that, before we sua sponte quash this appeal, the Court is certain that the Order **does not** resolve all claims against all parties and, thus, is truly an unappealable, interlocutory order.  Under these circumstances, if the majority has concerns, the prudent course would be to direct, **as the Court did in *Carter***, the parties' knowledgeable counsel to advise the Court as to whether the trial court's Order resolves all their claims.  This matter arose from a judgment Woods received after filing a complaint against the Cavotos for unpaid homeowners' association fees, which, in response to the Petition, the trial court opened and/or struck, and then reinstated and modified the parties' settlement agreement.  It is also apparent from the parties' briefing that they raise arguments about the merits of the trial court's Order, and not whether the Order was appealable.  There is nothing to be lost by allowing input from the parties as to appealability, and much to gain, for it is unclear what, if anything, will remain to be resolved by the trial court once this Court quashes the appeal.  As explained in *Carter*, slip op. at 4, if the trial court's Order had **only** opened and/or struck the judgment against the Cavotos, it should have put the parties back into the position they would have been in as if no judgment was

---

[3] What appears to mislead the majority is that the trial court's Order does open and/or strike the judgment against the Cavotos, but the Order does more than that.  I would conclude that, when read in its entirety, this Order is a final order under Rule 341, and, therefore, is **not properly or practically** within Rule 311(a)(1).  Rule 311(a)(1) provides, in relevant part, that "an appeal may be taken as of right . . . from . . . [a]n order refusing to open, vacate, or strike off a judgment." Pa.R.A.P. 311(a)(1).  It is undisputed that the trial court did not refuse to open and/or strike the judgment.  An order that does refuse to open and/or strike a judgment is immediately appealable under Rule 311(a)(1) because a judgment remains.  Just because the trial court did open and/or strike the judgment, and the Order therefore **does not fall under Rule 311(a)(1)**, does not mean the Order is not a final order.  As stated above, Rule 341(b) defines an order that resolves all claims against all parties as a final order, Pa.R.A.P. 341(b), which this Order does.

RCJ - 6

entered. However, the reinstatement and modification of the settlement agreement shows that the parties are **not** left without a judgment. Moreover, the trial court "waived" attorneys' fees awarded to Woods and awarded attorneys' fees to the Cavotos. Clearly, the parties have a **new** judgment. In other words, it appears there is nothing left for the trial court to do if this Court quashes the appeal.

The majority states that ordering supplemental briefing would only expend additional party resources. *Woods at Naamans Homeowners Ass'n v. Cavoto* (Pa. Cmwlth., No. 947 C.D. 2022, filed April 1, 2024), slip op. at 10-11. However, ironically, in quashing this appeal, the majority admittedly says the parties must move for a determination of finality with the trial court, *see id*. at 10-11,[4] and then to appeal, **again,** to this Court, with the attendant fees and costs, seeking a review of the same exact issues. To the extent a judgment needs to be entered, the Court can order Woods to docket a judgment, or the parties may praecipe the trial court for entry of judgment, without having to quash this appeal. Thus, the majority's proposed resolution is not without cost, in terms of money and time, to both the parties and the judiciary. Issuing a Rule to Show Cause, to confirm that there is no issue remaining, would accomplish the same result, assuaging any concerns the majority has. All that quashing does is increase the cost of litigation here, and waste both the litigants' and judicial resources, for no substantive benefit. And, under the rules, there is no reason for the parties to do more.

---

[4] However, under Rule 341(c)(1), such a motion must be filed within 30 days, and so it appears that there would be a timeliness issue.

In summary, because the trial court's Order disposes of all claims against all parties, it is incorrect to quash this appeal sua sponte. While I believe it is clear the Order is a final order, if I had any questions, I would issue a rule to show cause, allowing the parties to argue the appealability of the Order before this Court quashes their appeal. Accordingly, I respectfully, and vigorously, dissent from the majority's sua sponte quashing Woods' appeal.

_____
**RENÉE COHN JUBELIRER,** President Judge